**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 15-cv-01890-CMA-MEH

GEORGE W. STRAUB, IV,

    Plaintiff,

v.

BNSF RAILWAY COMPANY,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. # 56), DENYING DEFENDANT'S UNOPPOSED
MOTION FOR ORAL ARGUMENT (DOC. # 68) AND DENYING AS MOOT
PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT UNDER
RULE 54(B) (DOC. # 54)**

---

This matter is before the Court on Defendant BNSF Railway Company's Motion for Summary Judgment (Doc. # 56). On September 6, 2016, Plaintiff filed a Response (Doc. # 59), to which BNSF Railway Company replied on September 20, 2016 (Doc. # 61).[1] On September 27, 2016, this Court granted Plaintiff's motion for leave to file a surreply, and Plaintiff filed the surreply on November 23, 2016 (Doc. ## 65, 67). On December 1, 2016, Defendant filed an unopposed motion seeking oral argument on its motion for summary judgment. (Doc. 68.)

---

[1] Both parties have violated this Court's practice standards. Pursuant to CMA Civ. Practice Standard 10.1(c)(2), response briefs are limited to 20 pages and reply briefs are limited to 10 pages. Parties instructed that in the future, they must consult the Court's practice standards and comply with those rules.

For the following reasons, Defendant's motion for summary judgment is granted, Defendant's motion for oral argument is denied, and Plaintiff's motion for entry of judgment under Rule 54(b) is denied as moot.

## I. BACKGROUND

Plaintiff began working for Defendant on May 9, 1978, and worked as a locomotive engineer his entire career. (Doc. # 56 at 2, Doc. # 59 at 5.) On September 9, 2012, Plaintiff attempted to adjust the locomotive engineer's seat of the train on which he was working, BNSF 6295. (Doc. # 27 at 3 ¶ 9.) While in the process of adjusting the seat, Plaintiff was injured when the seat stopped "abruptly and unexpectedly." (*Id.*)

The engineer's cab seat in locomotive BNSF 6295 was installed in 2008. (Doc. # 56 at 5; Doc. # 59 at 7.) On March 1, 2012, a BNSF employee reported to the company that the "engineer's seat won't adjust and the foot pedal is broke." (Doc. # 56-3, at p. 16.) On March 22, 2012, the seat was inspected by a mechanical inspector who noted that the inspector found no issues with the seat. (*Id*.)

From April 10 to April 13, 2012, Defendant again performed an inspection of BNSF 6295, which included two inspectors testing the engineer's seat adjustment mechanism. (Doc. # 59-2 at p. 10.) All BNSF locomotives in regular use, including BNSF 6295, undergo routine six month inspections called M184 and M368 inspections. The records reflect that on April 10, 2012, BNSF 6295's cab operator seats were checked which included checking the "height adjustment assembly." (Doc. # 59-2 at 20.) This was confirmed by the deposition of Beau Price who stated that during the M184 and M368 inspections, the seat's ability to move "fore and aft and lateral" is inspected. (Doc. # 61-2 at 15.) Also on April 10, 2012, Tyson Westphal, who was a cab

2

carpenter for Defendant performed a cab seat leveling inspection (Doc. # 59-2 at p. 23.) Although Mr. Westphal's deposition reflects that he does not have any independent memory of his inspection of the engineer's seat on BNSF 6295, he stated that when conducting these inspections, he "run(s) though all motions of the seat, forward, back, up, down, seat tilt and back tilt to make sure everything is working properly." (Doc. # 67-1 at p. 7.)

Following these inspections, on September 9, 1012, while attempting to adjust the locomotive engineer's seat of the train on which he was working, BNSF 6295, Plaintiff was injured when the seat stopped "abruptly and unexpectedly." (Doc. # 27 at 3 ¶ 9.)

Plaintiff's amended complaint (Doc. # 27) advances claims for relief under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51-60, arguing that Defendant negligently failed to provide Plaintiff with a safe workplace. (Doc. # 27 at 2.) Specifically, Plaintiff claims that Defendant furnished him with a defective engineer's seat adjustment mechanism, creating an unsafe risk of injury. (Doc. # 27 at 3 ¶ 12-13.)

## II. ANALYSIS

Defendant has moved for summary judgment arguing that Plaintiff has adduced no evidence showing that the seat adjustment mechanism rendered the seat unreasonably unsafe or that Defendant had actual or constructive notice of the allegedly defective condition. (Doc. # 56 at 2.)

### A. Summary Judgment Standard

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper

disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id*. However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id*. In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial need not disprove the other party's claim; rather, the movant need simply point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy this burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id*.

**B. Federal Employer's Liability Act**

Pursuant to the FELA, Railroads are liable to their employees for injuries sustained in the course of their employment. The FELA provides:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

45 U.S.C. § 51.

To establish a prima facie case under the FELA, the plaintiff must prove that: (1) his injuries occurred within the scope of his employment; (2) he was employed as part of the railroad's interstate transportation business; (3) the railroad was negligent; and (4) the railroad's negligence played some part in causing the injury for which the employee seeks compensation. *Volner v. Union Pac. R. Co.*, 509 Fed. Appx. 706 (10th Cir. 2013) (unpublished); *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007). Under the FELA, a "relaxed" standard of causation applies and the plaintiff need only demonstrate that the railroad's negligence played a part, "no matter how small," in bringing about the injury. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 698-699 (2011).

The issue in this case is whether Plaintiff can establish the third element. Under the third element, a FELA plaintiff must offer evidence proving the common law elements of negligence, including duty, breach, foreseeability, and causation. *Chaffin v. Union Pacific R. Co.*, 192 Fed. Appx. 739 (10th Cir. 2006) (unpublished) (quoting *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059 (7th Cir. 1998)).

It is undisputed that a railroad employer has a duty to provide a reasonably safe workplace for its employees, including the equipment its employees use. *See, e.g., Shenker v. Baltimore & Ohio R.R. Co.*, 374 U.S. 1 (1963); *Peyton v. St. Louis*

*Southwestern Ry.*, 962 F.2d 832, 833 (8th Cir. 1992).[2] A railroad breaches this duty when it knew or should have known that its standards of conduct were inadequate to protect the plaintiff and similarly situated employees. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007).

    Plaintiff argues that Defendant breached its duty to provide a reasonably safe workplace in four ways.  First, Plaintiff argues that Defendant breached its duty to inspect, maintain, and repair the locomotive.  In support of this argument, Plaintiff alleges that there is no evidence of a M184 or M368 inspection from April 2012 through September 9, 2012, the date of Plaintiff's injury.   Second, Plaintiff argues that Defendant breached its duty to warn Plaintiff of the presence of the defective condition.  Third, Plaintiff argues that Defendant breached its duty to comply with its own rules and policies governing inspection, maintenance, and repair of its locomotives.  This argument again relies on Plaintiff's contention that there is no evidence of a M184 or M368 inspection of locomotive BNSF 6295.  Finally, Plaintiff argues that Defendant breached its duty to comply with Federal regulations governing the condition of its locomotive because the wall-mounted seat adjustment mechanism constitutes a component of the train and 49 C.F.R. § 229.45 provides that the locomotive "shall be free of conditions that endanger the safety of the crew," including "improper functioning of components." *Id.*[3]

    Most of Plaintiff's arguments rely on its argument that there is no evidence that Defendant conducted a M184 or M368 inspection on BNSF 6295 between April 2012

---

[2] Defendant uses terms like "unreasonably dangerous" and "inherently dangerous" in its brief. Plaintiff is correct that this is not the proper standard.  Plaintiff need only show that the workplace was not reasonably safe.
[3] The regulations, however, specifically enumerate the specific conditions that are covered, which does not include the seat adjustment mechanism.  49 C.F.R. § 229.45.

(when a complaint was lodged about the seat on BNSF 6295) and September 9, 2012 when Plaintiff was injured. Defendant, however, has submitted evidence that a M368 inspection was conducted on April 10, 2012. (Doc. # 59-2 at p. 10). Further, Defendant has submitted evidence that they conducted a seat leveling inspection on April 10, 2012 (which Plaintiff admits) and that the seat was inspected on March 22, 2012, in response to the complaint that was lodged on March 1, 2012. (Doc. # 56-3 at p. 16).

Defendant argues that Plaintiff cannot establish that Defendant's conduct was negligent because Plaintiff has adduced no evidence that the seat posed an unreasonable risk of harm. The Court, however, need not determine whether the seat posed an unreasonable risk of harm because, regardless, a FLSA claim still requires proof that Defendant acted negligently—that it knew or should have known about the risk of harm or injury and therefore negligently failed to protect Plaintiff from it.

Defendant argues that there is insufficient evidence to establish that it had notice that the seat was not in a reasonably safe condition and failed to take reasonable steps to guard against it. Plaintiff contends that Defendant had actual knowledge that the seat adjustment mechanism did not function properly due to the complaint on March 1, 2012. While it is certainly true that, on March 1, 2012, Defendant had notice there was an issue with the seat in BNSF 6295, this is not evidence that Defendant had notice that the seat remained an issue in September 2012, when Plaintiff was injured. Defendant conducted three inspections of the seat between the complaint in March and Plaintiff's injury in September, and the seat passed all inspections. Thus, the knowledge Defendant had was that the seat was functioning properly. *Williams*, 161 F.3d at 1062 (The "employer is not liable if it has no reasonable way of knowing that a potential hazard exists.")

7

Plaintiff admits that there is evidence of an "Engineers Cab Seat Leveling Inspection" on April 10, 2012. (Doc. # 59 at 21.) Plaintiff contends, however, that there are credibility questions regarding whether or not any of the inspections were actually done and, if done, whether they were adequately performed. First, Plaintiff argues that a jury could infer that the inspections were not conducted due to the fact that (1) the inspection found nothing wrong following a report that there was a problem, and (2) just five months after the inspections, on September 9, 2012, the seat again malfunctioned. Without any evidence to indicate that Defendant was fabricating inspections, such a leap of logic is not grounded in reasonable inference, but rather, ventures into the realm of mere speculation. *Tenant v. Peoria & Pekin Union Railway Co.*, 321 U.S. 29, 32 (1944) (although the court must permit all reasonable inferences to be drawn from the evidence presented, there exists an "essential requirement . . . that mere speculation be not allowed to do duty for probative facts").

Second, Plaintiff argues that this Court should disregard Mr. Westphal's testimony that he checked the motions of the seat to make sure it was working properly because there is no documentation to support his testimony. (Doc. # 67 at p.3). Plaintiff points out that the task description concerning his seat leveling inspection does not mention the wall-mounted seat adjustment mechanism. (*Id.*) The fact that there is no notation in the document does not lead to the conclusion that the inspection of the seat adjustment mechanism did not occur. This is not a case where there should be a notation and, thus, the documentary evidence is conspicuously missing. Further, a

witness' deposition testimony is no less proof of an issue than documentary evidence. Indeed, Plaintiff has provided this Court with no evidence to the contrary.[4]

Finally, in his surreply, Plaintiff submits evidence that Defendant had been warned that the roller and track should not be lubricated to guard against dirt, dust, or other materials that could cause the rollers to bind up. (Doc. # 67 at p. 9.) First, this Court will not consider issues first raised in a surreply brief that could have been raised in Plaintiff's response. *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief.") Second, although Plaintiff has presented evidence that the tracks should not be lubricated, he has not presented evidence that the tracks on BNSF 6295 were lubricated prior to his injury.

Accordingly, this Court finds that Plaintiff has not presented a genuine issue of fact sufficient to establish that Defendant had notice that the seat was not in a reasonably safe condition and failed to take reasonable steps to guard against it, or that it was reasonably foreseeable that Plaintiff could have been injured.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant BNSF's Motion for Summary Judgment (Doc. # 56) is GRANTED. It is

FURTHER ORDERED that Defendant's Unopposed Request for Oral Argument on Pending Motion for Summary Judgment (Doc. # 68) is DENIED. It is

---

[4] The Court is not making a credibility determination at this juncture. However, on a motion for summary judgment, once the moving party has pointed the Court to the lack of evidence on an essential element of the nonmoving party's claim, the nonmoving party must set form "specific facts" with supporting documentation. *Adler*, 144 F.3d at 671. Plaintiff has not done that here.

FURTHER ORDERED that Plaintiff's Rule 54(b) Motion for Entry of Final Judgment (Doc. # 54) is DENIED AS MOOT. It is

FURTHER ORDERED that the case is DISMISSED WITH PREJUDICE.

DATED: January 13, 2017					BY THE COURT:

								CHRISTINE M. ARGUELLO
								United States District Judge